**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| STATE OF WASHINGTON, | No.  54502-1-II |
| Respondent, | |
| v. | PART PUBLISHED OPINION |
| ZACHARY ALAN FLETCHER, | |
| Appellant. | |

WORSWICK, J. — Zachary Fletcher appeals his convictions and sentence for two counts of vehicular assault.  Fletcher argues that the trial court erred when it sentenced him to an exceptional sentence upward based on the severity of the victims' injuries pursuant to RCW 9.94A.535(3)(y).  Specifically, Fletcher argues that the trial court erred when (1) it failed to issue findings on the mitigating factor that the victims were "willing participants," (2) it failed to balance the mitigating factor against the aggravating factors, and (3) it imposed an exceptional sentence upward.

In a statement of additional grounds (SAG), he argues that (4) the trial court erred in finding that he was the driver at the time of the collision, (5) the State violated his due process rights by failing to properly handle key evidence, and (6) the prosecutor committed prosecutorial misconduct during closing argument when he commented on Fletcher's refusal to testify.

In the published portion of the opinion, we hold that the trial court was not required to enter findings on the mitigating factor, nor was it required to balance the mitigating factor against the aggravating factor, and it did not err in imposing an exceptional sentence upward.  In the unpublished portion of the opinion, we reject the remainder of Fletcher's arguments.

Accordingly, we affirm Fletcher's convictions and sentence.

FACTS

On the evening of May 31, 2018, Fletcher, Jacob Torey, and Naomi Kuykendall, arranged to meet so they could party together. Torey first called Fletcher because Fletcher had a vehicle and then texted Kuykendall, who brought beer.[1] All three of them drank beer on their way to "Six Pack," an area where they drank and shot guns. Afterward, Fletcher and Kuykendall took turns driving the truck to their next destination, the spit at Ediz Hook.[2]

Fletcher was driving erratically and speeding. As Fletcher was driving, Kuykendall recorded "Snapchat" videos and sent them to her friends. Fletcher drove the vehicle on the way back from the spit, and crashed it into concrete blocks and a light pole at a high rate of speed. Torey was ejected from the vehicle. Fletcher's blood alcohol content (BAC) was 0.18 at the time of the collision. As a result of the accident, Torey was paralyzed from the waist down, and Kuykendall sustained a fractured sternum and three fractured vertebrae.

Torey spent a month in Harborview Medical Center, where he needed rehabilitation to help him regain some bodily functions like transitioning to his bed, going to the bathroom, getting dressed, and other functions. Kuykendall's injuries required the doctors to install a metal rod and screws down her neck. Kuykendall suffered from daily neck pain, loss of neck mobility, memory loss, and other physical limitations. Kuykendall also had to switch her career path from nursing to something less physically demanding due to her injuries from the accident.

---

[1] At the time of the incident, Fletcher was 21 years old, Torey was 18 years old, and Kuykendall was 19 years old.

[2] Kuykendall testified that she drove for a short amount of time before she switched with Fletcher.

The State charged Fletcher with two counts of vehicular assault. Each count included the special allegation aggravating factor under RCW 9.94A.535(3)(y) that the injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense. Fletcher waived his right to a jury trial. The matter proceeded to a bench trial.

The trial court found Fletcher guilty as charged. The trial court entered the following findings after trial:

> 1. During the early morning hours of June 1, 2018, Zachary A. Fletcher was the driver of a vehicle at the time that the vehicle was involved in a crash occurring on Marine Drive in Port Angeles, Clallam County, Washington.
>
> 2. At the time of the crash Zachary A. Fletcher was operating the vehicle in a reckless manner and while under the influence of intoxicating liquor.
>
> 3. At the time of the crash, Jacob Torey was a passenger in the vehicle being driven by Zachary A. Fletcher.
>
> 4. At the time of the crash, Naomi Kuykendall was a passenger in the vehicle being driven by Zachary A. Fletcher.
>
> 5. Zachary A. Fletcher's driving at the time of the crash caused substantial bodily harm to Jacob Torey. Jacob Torey was ejected from the vehicle. He suffered a severe T12 fracture-translation with large bony fragment obliterating the central canal. He is now paralyzed below the point of the T12 fracture. He also suffered various other injuries which included broken bones.
>
> 6. Zachary A. Fletcher's driving at the time of the crash caused substantial bodily harm to Naomi Kuykendall. Naomi Kuykendall suffered fractures involving the anterior and posterior arch of C1 as well as fractures to her thoracic spine and her manubrium sterni. The injury to C1 was treated operatively by the placing of screws and continues to cause her loss of motion.
>
> 7. Jacob Torey's injuries substantially exceeded the substantial bodily harm necessary to satisfy the elements of the charged offense.
>
> 8. Naomi Kuykendall's injuries substantially exceeded the substantial bodily harm necessary to satisfy the elements of the charged offense.

Clerk's Papers at 17-18.

The standard range for these crimes was 12+ to 14 months. At sentencing, the State requested an exceptional sentence of 72 months for count I based on the severity of Torey's injuries and 24 months for count II based on Kuykendall's injuries to be served concurrently. Fletcher asked for a sentence within the standard range, arguing that because Kuykendall and Torey were willing participants, the trial court should consider their participation as a mitigating factor and balance that against the aggravating factor of the victims' injuries. The trial court considered this argument, stating:

> I've spent considerable amount of time thinking about this case, thinking about today, reading all the cases I could find where there have been convictions for vehicular assault and punishments that courts have imposed as a result of that and how the facts of those cases are similar to or dissimilar from this case — to try and come up with some sort of sensible approach to what should occur here.
>
> . . . .
>
> In this case, the severity of the injuries are something clearly the Court has to consider. The participation of others is also embodied in our law as something for the Court to consider.
>
> I don't have the ability to really express with clarity in a way that probably can answer everybody's questions or how all that gets synthesized into a final decision in this matter. But I do believe that as I found at the trial, that an aggravating factor is clearly applicable because of the nature of the injuries that these victims have suffered and will continue to suffer.
>
> . . . .
>
> [T]hat's not to say there's not others that may be responsible, for example, somebody provided minors alcohol that night, that was probably a crime for whoever did that. Um, we had minors drinking, but we also—uh, you allowed that to occur in your presence and in your car. All those factors get weighed somehow.

3 Report of Proceedings (RP) (Mar. 11, 2020) at 98-99.

The court then imposed an exceptional sentence of 48 months on each count to run concurrently.

Fletcher appeals his convictions and sentence.

ANALYSIS

I. THE TRIAL COURT IS NOT REQUIRED TO MAKE FINDINGS OF MITIGATING FACTORS WHEN IT IMPOSES AN EXCEPTIONAL SENTENCE UPWARD

As a preliminary matter, Fletcher argues that the trial court was required to make a written finding on the mitigating factor that the victims were willing participants in the incident. We disagree.

To determine whether the trial court was required to issue findings on the mitigating factor, we must first ascertain the meaning of the relevant statutes, RCW 9.94A.535 and RCW 9.94A.537, subsections (3) and (6).

We review questions of statutory interpretation de novo. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010). When a court interprets a statute, its objective is to determine the legislature's intent. *Ervin*, 169 Wn.2d at 820. If the statute's meaning is plain on its face, we give effect to that plain meaning. *Ervin*, 169 Wn.2d at 820. To determine the plain meaning of a statute, courts examine the text of the statutory provision, and the "'context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" *Ervin*, 169 Wn.2d at 820 (quoting *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)). If, after this inquiry, the statute is susceptible to more than one reasonable interpretation, it is ambiguous and we "'may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent.'" *Ervin*, 169 Wn.2d at 820 (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)).

RCW 9.94A.535 imposes requirements on sentencing courts when they depart from the standard range sentence. It states that "[w]henever a sentence outside the standard sentence

range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law." RCW 9.94A.535.

RCW 9.94A.537 governs aggravating circumstances and sentences above the standard range. It states, in relevant part,

> (3) The facts supporting aggravating circumstances shall be proved to a jury beyond a reasonable doubt. The jury's verdict on the aggravating factor must be unanimous, and by special interrogatory. If a jury is waived, proof shall be to the court beyond a reasonable doubt, unless the defendant stipulates to the aggravating facts.
>
> . . . .
>
> (6) If the jury finds, unanimously and beyond a reasonable doubt, one or more of the facts alleged by the state in support of an aggravated sentence, the court may sentence the offender pursuant to RCW 9.94A.535 to a term of confinement up to the maximum allowed under RCW 9A.20.021 for the underlying conviction if it finds, considering the purposes of this chapter, that the facts found are substantial and compelling reasons justifying an exceptional sentence.

RCW 9.94A.537(3), (6).

The only statute discussing the findings requirements is RCW 9.94A.535. The plain language of the statute requires the trial court to enter findings and conclusions only to support its decision for an exceptional sentence. Nowhere in the statute does the legislature require the sentencing court to issue findings about factors it considered but which did not ultimately influence its decision. *See State v. Davis*, 47 Wn. App. 91, 96, 734 P.2d 500 (1987) (holding that a sentencing judge "need only enter findings in support of an exceptional sentence.").[3]

---

[3] *Davis* analyzed RCW 9.94A.120, a version of the statute that has since been held to be unconstitutional as applied for reasons that are not relevant here. *See* 47 Wn. App. at 96-98; *Blakely v. Wash.*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). However, the language in RCW 9.94A.120 is identical to the language in the current version of RCW 9.94A.535. *Davis*, 47 Wn. App. at 96-98.

In *Davis*, the court rejected the same argument that Fletcher makes here: that the trial court was required to issue findings on mitigating factors even when it imposes an exceptional sentence upward. The court in *Davis* reasoned that a trial court is only required to issue findings on mitigating factors "if the trial court wished to sentence the defendant to a term *less* than the presumptive sentence under the [Sentencing Reform Act]." *Davis*, 47 Wn. App. at 96 (emphasis added). We see no reason to depart from the holding in *Davis*.

Moreover, Fletcher's interpretation would lead to absurd results. A reading of a statute that produces absurd results must be avoided because it will not be presumed that the legislature intended absurd results. *Ervin*, 169 Wn.2d at 823-24. Fletcher's interpretation of the statute would require sentencing courts to issue findings for every factor that could possibly be considered in sentencing, even factors that did not ultimately affect the decision. Such a requirement would lead a sentencing court to issue extensive findings and conclusions on every conceivable mitigating or aggravating factor each time it imposed an exceptional sentence regardless of its relevance to the decision. This result is impractical, if not impossible. The purpose of findings is to enable the appellate courts to review the sentence imposed by the lower court. RCW 9.94A.585(5). Findings are not meant to be an exhaustive summary of all the facts affecting any factor implicated in the case. *See* RCW 9.94A.535. Fletcher's suggested reading of the statute would lead to an absurd result.

Fletcher also argues that RCW 9.94A.537 subsections (3) and (6) require the trial court to find both "mitigating and/or aggravating factors" before it imposes an exceptional sentence in any direction if the facts present "substantial and compelling reasons justifying an exceptional sentence." Br. of Appellant at 8. The argument fails.

7

RCW 9.94A.537 applies only to *aggravating* factors, not mitigating factors. Aggravating factors and mitigating factors are procedurally different because each one requires a different standard of proof. RCW 9.94A.537(3) (the standard of proof for aggravating factors is beyond a reasonable doubt), .535(1) (the standard of proof for mitigating factors is by a preponderance of the evidence). Therefore, it is erroneous to apply to mitigating factors statutory principles applicable only to aggravating factors.

Fletcher cites to *State v. Hinds*, 85 Wn. App. 474, 487, 936 P.2d 1135 (1997), to support his position that the court "is obliged to find a causal connection between the actions of the victim as a willing participant" and the vehicular assault. Br. of Appellant at 10. In *Hinds*, the trial court convicted Hinds of one count of vehicular homicide and imposed an exceptional sentence downward. *Hinds*, 85 Wn. App. at 476. The *Hinds* court remanded the case to the trial court to issue findings supporting a causal link between the accident and the victim's participation. *Hinds*, 85 Wn. App. at 482-86. *Hinds* is distinguishable because the court there imposed an exceptional sentence downward. *Hinds*, 85 Wn. App. at 481. It was appropriate for the appellate court to remand the case to the trial court to issue findings on the mitigating factors it considered when it imposed the exceptional sentence downward. *Hinds* does not stand for the proposition that a court is *required* to issue findings on mitigating factors even when the trial court imposes an exceptional sentence upward. Therefore, *Hinds* is inapplicable.

Fletcher also cites to *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005), to support his position that a defendant is entitled to request a downward sentence and to have his request actually considered. However, Fletcher never asked for an exceptional sentence downward. He asked for a sentence within the standard range. In any event, the trial court did

consider Fletcher's request. At sentencing, the trial court considered the severity of the injuries as well as the participation of others, stating that it had spent a considerable amount of time reading cases and thinking about Fletcher's sentence. The court also stated:

> The law has presumptions. In your case there's a presumption that we start with a standard range of 12 to 14 months for what happened. But then it also has . . . safety valves. Safety valves that if a presumptive sentence is excessive, the court can do something less than that, or if it's not sufficient, the court can add time.
>
> . . . .
>
> In this case, the severity of the injuries are something clearly the Court has to consider. The participation of others is also embodied in our law as something for the Court to consider.
>
> . . . .
>
> But I do believe that as I found at the trial, that an aggravating factor is clearly applicable because of the nature of the injuries that these victims have suffered and will continue to suffer.

3 RP (Mar. 11, 2020) at 98-99. The trial court considered Fletcher's request for a sentence within the standard range but imposed an exceptional sentence because it found that an aggravating factor justified a higher sentence. Thus, *Grayson* is not controlling here.

In conclusion, all of Fletcher's arguments fail. Neither RCW 9.94A.535 nor RCW 9.94A.537 requires a trial court to issue findings on mitigating factors when it imposes an exceptional sentence upward. Therefore, we hold that the trial court did not err by not making findings on the mitigating factor when it imposed an exceptional sentence upward.

## II. THE TRIAL COURT WAS NOT REQUIRED TO BALANCE MITIGATING AND AGGRAVATING FACTORS

Fletcher also argues that the trial court erred when it did not balance the mitigating and aggravating factors. We disagree.

9

Trial courts are not required "to enter into a balancing of aggravating and mitigating factors on the record." *Davis*, 47 Wn. App. at 96-98. The trial court need only support its decision for an exceptional sentence with findings. *Davis*, 47 Wn. App. at 96; RCW 9.94A.535. Here, the trial court did consider the mitigating factor in its sentence by stating that:

> The participation of others is also embodied in our law as something for the Court to consider . . . But I do believe that as I found at the trial, that an aggravating factor is clearly applicable because of the nature of the injuries that these victims have suffered and will continue to suffer.

3 RP (Mar. 11, 2020) at 98-99. The trial court was not required to balance the mitigating and aggravating factors, and, to the extent that it was required to consider the mitigating factor, it did so.

Fletcher cites to *State v. Ziglar*, 209 N.C. App. 461, 705 S.E.2d 417 (2011), where a trial court held that an aggravating factor and a mitigating factor "essentially cancel each other out." *Ziglar*, 209 N.C. App. at 463. The *Ziglar* court imposed a sentence within the standard range. *Ziglar*, 209 N.C. App. at 463. Setting aside the fact that *Ziglar* is a case from North Carolina and the language Fletcher cites is merely from the facts of the case, the case is otherwise distinguishable. The court in *Ziglar* imposed a sentence within the standard range, and the reviewing court held that Ziglar could not appeal his standard range sentence. *Ziglar*, 209 N.C. App. at 465-66. Moreover, *Ziglar* does not stand for the proposition that courts are *required* to have mitigating and aggravating factors "cancel each other out." *Ziglar*, 209 N.C. App. at 463. It was simply one trial court's reasoning as to why it did not impose an exceptional sentence.

We hold that the trial court did not err when it did not balance the mitigating and aggravating factors, and to the extent it was required to, the trial court considered the mitigating factor. Thus, Fletcher's argument fails.

10

### III. THE TRIAL COURT DID NOT ERR IN IMPOSING AN EXCEPTIONAL SENTENCE

Fletcher's argument calls into question the propriety of his exceptional sentence. He argues that his sentence is unsupported by the record and is clearly excessive. He also argues that the reasons supplied by the trial court do not justify imposing an exceptional sentence. We disagree.

To reverse a sentence that is outside the standard sentence range, the reviewing court must find that (a) the reasons supplied by the sentencing court are not supported by the record that was before the judge; (b) that those reasons do not justify a sentence outside the standard sentence range for that offense; or (c) that the sentence imposed was clearly excessive or clearly too lenient. RCW 9.94A.585(4). Each prong corresponds to its own standard of review. *State v. Law*, 154 Wn.2d 85, 93, 110 P.3d 717 (2005).

A.     *The Record Supports the Reasons Supplied by the Trial Court*

We review whether the reasons given by the trial court for the exceptional sentence are supported by the record under a clearly erroneous standard. *Law*, 154 Wn.2d at 93. A finding of fact is clearly erroneous if no substantial evidence supports it. *State v. Morris*, 87 Wn. App. 654, 659, 943 P.2d 329 (1997). Unchallenged findings of fact become verities on appeal. *In re Davis*, 152 Wn.2d 647, 679, 101 P.3d 1 (2004).

RCW 9.94A.535(3)(y) permits the court to impose an exceptional sentence upward if it finds that the "victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense." One of the elements for vehicular assault is that the victim suffered substantial bodily harm. RCW 46.61.522(1)(a). "Substantial bodily harm" is defined as "bodily injury which involves a *temporary* but substantial disfigurement, or which causes a *temporary*

11

but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." RCW 9A.04.110 (emphasis added).

The trial court imposed an exceptional sentence because it found, pursuant to RCW 9.94A.535(3)(y), that the victims' injuries substantially exceeded the level of bodily harm necessary to satisfy the elements of the offense. Fletcher does not contest the trial court's findings, and the findings are supported by the record. Both victims suffered *permanent* loss or impairment in function. Torey suffered a severe fracture which resulted in paralysis from the waist down. And, Kuykendall suffered from fractures that required doctors to place screws and a metal rod down her neck, restricting her range of motion. Both findings are supported by the victims' testimony. Thus, the reasons supplied by the trial court are supported by the record.

B.      *The Reasons Supplied by the Trial Court Justify an Exceptional Sentence Upward*

We review whether the reasons supplied by the trial court justify a departure from the standard range under a de novo standard. *Law*, 154 Wn.2d at 93. In our review of the legal adequacy of an aggravating factor, we employ a two-part test: "(1) The trial court may not base an exceptional sentence on factors the Legislature necessarily considered in establishing the standard sentencing range; and (2) the aggravating factor must be sufficiently substantial and compelling to distinguish the crime in question from others in the same category." *State v. Jennings*, 106 Wn. App. 532, 555, 24 P.3d 430, 442-43 (2001).

To support a conviction for vehicular assault, the level of injury required is "substantial bodily injury," which is injury that "involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ." RCW 46.61.522(1)(a); RCW 9A.04.110.

RCW 9.94A.535 permits the trial court to impose a sentence outside the standard range if one of the circumstances in RCW 9.94A.535(2) or (3) is met. Under RCW 9.94A.535(3)(y), a finding that the victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense supports an exceptional sentence upward.

Here, both prongs of the test are met. First, the trial court determined that Kuykendall's and Torey's injuries exceeded the level of bodily harm required for the offense beyond a reasonable doubt. To satisfy a vehicular assault conviction, the State was required to show "temporary" loss in function. RCW 46.61.522; RCW 9A.04.110. But both victims suffered substantially more than a temporary loss in function: Torey is paralyzed, and Kuykendall suffered permanent loss of function in her neck as well as memory loss. The trial court correctly concluded that the State proved the aggravating factor beyond a reasonable doubt. Therefore, the trial court did not base its decision for an exceptional sentence on factors the legislature necessarily considered in establishing the standard sentencing range.

Second, the aggravating factor was sufficiently substantial and compelling to distinguish the crime in question from others in the same category because the legislature specifically included the present circumstance as an aggravating factor under RCW 9.94A.535(3)(y).

Thus, the reasons justify the exceptional sentence as a matter of law because the statute states that this finding is grounds for an exceptional sentence. Therefore, the reasons supplied by the trial court justify the exceptional sentence.

C.    *The Exceptional Sentence Was Not Clearly Excessive*

If the reasons are supported by the record and justify an exceptional sentence, we can still reverse an exceptional sentence if the sentence imposed was clearly excessive or clearly too

lenient. *State v. Ritchie*, 126 Wn.2d 388, 392, 894 P.2d 1308 (1995). We review whether the sentence is too excessive or too lenient for an abuse of discretion. *Law*, 154 Wn.2d at 93.[4]

A sentence is clearly excessive when it is "based on untenable grounds or untenable reasons, or an action no reasonable judge would have taken." *State v. Branch*, 129 Wn.2d 635, 649-50, 919 P.2d 1228 (1996). When examining whether the trial court abused its discretion by imposing a sentence that is clearly excessive, the reviewing court does not engage in a proportionality review to determine whether the sentence is comparable to sentences in other similar cases. *Ritchie*, 126 Wn.2d at 396.

Here, the State recommended an exceptional sentence of 72 months, and the trial court imposed 48 months. Considering the severity of the victims' injuries and the lifelong consequences that accompany those injuries, the exceptional sentence was not based on "untenable or unreasonable grounds." *Branch*, 129 Wn.2d 650. And, Fletcher has not shown that no reasonable judge could have imposed the exceptional sentence.

Based on the above, Fletcher's argument fails, and the exceptional sentence was not clearly excessive.

## CONCLUSION

We hold that the trial court (1) was not required to make findings on the mitigating factor when it imposed an exceptional sentence upward, (2) did not err by not balancing the mitigating and aggravating factors, and (3) did not err in imposing an exceptional sentence upward. Accordingly, we affirm Fletcher's convictions and sentence.

---

[4] Because Fletcher's sentence is in an exceptional sentence upward, we only consider whether the sentence was too excessive.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

UNPUBLISHED TEXT FOLLOWS

IV. STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In his SAG, Fletcher argues that the trial court erred in finding that he was the driver and that the State violated his due process rights by improperly handling key evidence. He also argues that the prosecutor committed prosecutorial misconduct during closing argument when he commented on Fletcher's refusal to testify.

A.       *Additional Facts*

At trial, the defense called expert witness George Chan, a forensic scientist. He identified a blood sample as Kuykendall's. Based on his experience, Kuykendall's blood, which was found by the front seat, provided "strong indication" that Kuykendall was in the driver seat. 2 RP (Feb. 13, 2020) at 690. The defense also called witness David Wells, a reconstruction expert, who testified that based on collision dynamics and Chan's DNA analysis, the evidence makes it likely that Kuykendall was the driver. Fletcher relies on these two pieces of evidence to argue that Kuykendall was the driver.

The State introduced evidence of Fletcher admitting, four times, to being the driver when the accident occurred. It also introduced expert testimony that the blood in the car is inconclusive of the seating arrangement at the time of the collision due to the impact, which may have caused the victims' blood to shift in the car. In addition, the State introduced a video taken

15

by Kuykendall shortly before the collision which showed Fletcher in the driver's seat.  1 RP at 360.

During the State's closing argument, the prosecutor stated:

just briefly responding to some of the things [counsel] said, and the first one is he says that none of the three people in the truck remember what happened.  But what is the evidence that Mr. Fletcher doesn't remember what happened?  What evidence was presented at this trial that he does not remember what happened? None. There's no evidence of that.

3 RP (Feb. 18, 2020) at 45-46.  Fletcher objected to this statement, but the trial court overruled the objection.  The prosecutor went on to comment on the fact that the defense never presented evidence supporting its claim that Fletcher had no memory of the incident stating:

In fact, Mr. Fletcher went to the doctor twice, on June 1st and June 12th, and neither time endorses any sort of memory issues. There's no evidence to back up that statement.  So there's still no explanation for why he would confess five times to four people over two days to being the driver.

3 RP (Feb. 18, 2020) at 46.

B.      *Sufficiency of the Evidence and Due Process*

Fletcher argues that the State failed to meet its burden of proving vehicular assault beyond a reasonable doubt for two reasons: (1) the defense presented evidence at trial that Fletcher was not the driver at the time of the collision, and (2) the State mishandled a piece of evidence that could have exonerated Fletcher.  We hold that the evidence at trial was sufficient to support a conviction of vehicular assault, and we do not reach the mishandling of evidence issue because Fletcher relies on evidence outside the record.

1. *Sufficiency of the Evidence*

Fletcher argues that the evidence was insufficient to support a finding that he was the driver at the time of the collision, an essential element of vehicular assault.  We disagree.

16

When reviewing a sufficiency of the evidence claim, we do not hear or weigh evidence, find facts, or substitute our opinions for those of the trier-of-fact. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 572-75, 343 P.2d 183 (1959). Instead, we defer to the factual findings made by the trier-of-fact. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Here, there was conflicting evidence at trial, including evidence from experts. But, Fletcher confessed four times that he was the driver to various eye witnesses shortly after the accident. He was in a video filmed by Kuykendall that showed him in the driver's seat before the collision. Judging by the evidence presented at trial, a rational trier of fact could find that Fletcher was the driver, and thus, the evidence supports a conviction of guilt. Fletcher is asking this court to reweigh the evidence, but we cannot impede on a function reserved exclusively for the trier-of-fact. *State v. Smith*, 31 Wn. App. 226, 228, 640 P.2d 25 (1982) ("Judgment as to the credibility of witnesses and the weight of evidence is the exclusive function of the jury.").

We hold that the trial court had sufficient evidence to find that Fletcher was the driver at the time of the collision.

2. *Handling the Evidence*

Next, Fletcher argues that the evidence presented at trial was contaminated because the State improperly handled airbags and that removal of the driver's side airbag was done in bad faith. He argues that "it was not . . . routine practice or policy" for the Sheriff to remove valuable evidence the way the deputy removed this airbag. SAG at 8. We cannot reach this issue because Fletcher refers to matters outside the record on appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). The record on appeal contains no information or

17

evidence about how the airbag was removed and whether the manner in which this airbag was removed conflicted with the standard procedure for airbag removal.

Accordingly, we cannot address this argument.

C.      *Prosecutorial Misconduct*

Fletcher argues that the prosecutor committed misconduct when he commented on Fletcher's refusal to testify. We disagree because the comment was not improper.

We review prosecutorial misconduct for an abuse of discretion. *State v. Wang*, 5 Wn. App. 2d 12, 30, 424 P.3d 1251 (2018). We view statements made "within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). During closing argument, prosecutors have wide latitude to argue reasonable inferences from the evidence. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). It is not improper for a prosecutor to argue that a defendant is guilty of the crimes charged when, viewed in the context of the entire argument, it is clear that the prosecutor is not expressing a personal opinion, but is arguing from the facts presented at trial. *State v. McKenzie*, 157 Wn.2d 44, 53, 134 P.3d 221 (2006).

In a prosecutorial misconduct claim, the defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial. *McKenzie*, 157 Wn.2d at 52. The defendant must first show that the prosecutor's statements are improper. *McKenzie*, 157 Wn.2d at 52. If the defendant establishes that the prosecutor made improper statements and the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the outcome. *McKenzie*, 157 Wn.2d at 52.

No. 54502-1-II

Here, the prosecutor's comment referred to the evidence presented at trial. The defense's theory relied on attacking the victims' credibility, claiming that due to the trauma, none of the passengers, including Fletcher, could recall what happened. However, on at least four different occasions after the accident, Fletcher admitted to being the driver, which debunked the defense's theory. The prosecutor's comment was in direct reference to the evidence presented at trial; it was not a comment about Fletcher's refusal to testify nor was it an expression of personal opinion.

Because the prosecutor's comment was directly related to the evidence presented at trial, it was not improper, and therefore, does not constitute misconduct.

Fletcher raises no reversible issues in his SAG. We reject his claims that the trial court did not have sufficient evidence to convict him, that the State mishandled the evidence, and that the prosecutor committed misconduct. Sufficient evidence supports Fletcher's conviction for vehicular assault, and the prosecutor did not commit misconduct because his comment was not improper.

Accordingly, we affirm Fletcher's convictions and sentence.

_____
Worswick, J.

We concur:

_____
Glasgow, A.C.J.

_____
Veljacic, J.

19